IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-01580-CMA-BNB

BRANDON MCCLELLAND,

Plaintiff,

v.

BLAZIN' WINGS, INC., d/b/a BUFFALO WILD WINGS GRILL & BAR,

Defendant.

_____

**ORDER**
_____

Pending is **Defendant's Motion for a F.R.C.P. 26(c) Protective Order Regarding the Statement of Donald Mehas** [Doc. # 15, filed 11/11/2009] (the "Motion for Protective Order"), which is GRANTED as specified.

I.

This case arises out of a bar fight which occurred on May 22, 2009, at the Buffalo Wild Wings Grill & Bar in Westminster, Colorado. The plaintiff, Brandon McClelland, was a customer at the bar. His nose was broken by a punch thrown by Travis Reed, another customer. The Complaint asserts two claims for relief. First, the plaintiff brings a premises liability claim under section 13-21-115, C.R.S. In addition, the plaintiff asserts civil liability under section 12-47-801, C.R.S., because the defendant sold alcohol to Travis Reed after he was visibly intoxicated. The claims are based on the following alleged facts:

> Buffalo Wild Wings did not prevent [Reed] from becoming intoxicated, they served [Reed] while he was visibly intoxicated, and they did not provide for reasonable security of their patrons.

Scheduling Order [Doc. # 12, filed 9/2/2009] at Part 3(a).

This action was commenced by the filing of a Complaint in Colorado State court on June 17, 2009.[1] *Defendant's Notice of Removal* [Doc. # 1, filed 7/6/2009] (the "Notice of Removal") at ¶2. The plaintiff is represented by Jeremy Rosenthal of the law firm of Rosenthal & Heymann, LLC. The plaintiff, through his lawyers, engaged the services of Daril Cinquanta, a private investigator. On June 17, 2009, the day suit was commenced, Cinquanta contacted and interviewed Donald Mehas, the defendant's bartender on duty on the night of the bar fight and a witness to the events at issue here. Cinquanta identified himself only as "the investigator," but did not specify that he had been engaged by McClelland's lawyers. The interview was conducted over the telephone. Cinquanta recorded the telephone interview without the knowledge or consent of Mehas.

A transcript of the recorded interview includes the following:[2]

> (DC) Hey this is Daril Cinquanta the investigator. Now the reason I'm calling is because of that incident on May 22nd and a these are the guys that a I guess you shut off and then they went out on the patio and assaulted those people there.
>
> (DM) Yes.
>
> (DC) Do you remember this?
>
> (DM) Yes I do.
>                                  *   *   *

---

[1] The action was removed to this court on July 6, 2009. *Notice of Removal* [Doc. # 1].

[2] The transcript uses the initials DC to identify statements by the investigator, Daril Cinquanta, and DM to identify statements by the bartender, Donald Mehas.

(DC)   Okay.  Now when they [Reed and his companions] went out on the patio they went out there with a the drinks that they had in hand didn't they?

(DM)   Yeah.

(DC)   Okay.  Would you say that they were intoxicated and belligerent?

(DM)   They yeah they were pretty pretty drunk.

\* \* \*

(DC)   Okay.  Let's see here, the police officer that interviewed you.

(DM)   Mm hmm.

(DC)   He said a Mehas advised me that he was the bartender that observed the loud and unruly behavior of the two suspects and cut them off from alcohol service.

(DM)   Mm hmm.

(DC)   Is that true?

(DM)   Yeah.

\* \* \*

(DC)   Okay.  Alrighty let's see here.  Anything else you want to add?

(DM)   A no.

(DC)   Okay.

(DM)   Well just that I didn't initially tell them that they were cut off.  I didn't I didn't actually tell them I told the fiancé.

(DC)   Okay.

(DM)   I didn't I didn't that to get twisted around.

(DC)   Okay.  Why'd you tell her?

3

>    (DM)   Cause it was after the glass had been broken and they were
>    all they were laughing and everything outside so I figured
>    everything was fine but I knew that they you know were.
>
>    (DC)   Did you kind of think that if you told them that they were
>    shut off you might have to battle them?
>
>    (DM)   Well yeah it it usually comes to that when you have you
>    know when you cut people off. I've had to do that a couple of
>    times.

*Interview of Don Mehas* [Doc. # 15-2, filed 11/11/2009] at pp.1, 2-3, and 5-6.

## II.

Plaintiff's counsel committed three ethical violations.[3] In each of the three instances, the misconduct was committed by Daril Cinquanta, the investigator engaged by plaintiff's counsel. Rule 8.4(a), Colorado Rules of Professional Conduct ("C.R.P.C."), however, prohibits a lawyer from violating the rules of professional conduct "through the acts of another" and attributes the investigator's misconduct to the supervising lawyers.

First, plaintiff's counsel violated Rule 4.2, C.R.P.C., when the investigator, without the permission of the defendant's lawyer, contacted Donald Mehas, an employee of the defendant whose statements about the events surrounding the fight may constitute admissions by the defendant.

Second, plaintiff's counsel violated Rule 4.1(a), C.R.P.C., when the investigator failed to disclose to Mehas prior to the interview that he worked for the plaintiff and that the purpose of

---

[3]With a few exceptions not applicable here, the Colorado Rules of Professional Conduct have been adopted as the standard of professional responsibility applicable to the practice by lawyers in this court. See D.C.COLO.LCivR 83.4.

the interview was to gather facts for the plaintiff's civil action against Mehas' employer. See Colorado Formal Ethics Opinion 69.

Third, plaintiff's counsel violated Rule 8.4(c), C.R.P.C., when the investigator surreptitiously recorded his telephone interview with Mehas. Even if the lawyers had no prior knowledge of the investigator's surreptitious recording, once they learned that the interview was recorded without Mehas' consent they should not have listened to or used the recording without Mehas' permission. See Colorado Formal Ethics Opinion 112.

### III.

#### A. Violation of Rule 4.2

Rule 4.2, C.R.P.C., provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

There is no allegation that the plaintiff's lawyers violated Rule 4.2 by personally contacting Mehas. Instead, the defendant claims that the plaintiff's lawyers engaged Cinquanta, who violated the rule. However, Rule 8.4(a), C.R.P.C., prohibits a lawyer from violating the rules of professional conduct "through the acts of another." See also Comment 4 to C.R.P.C. 4.2 ("[a] lawyer may not make a communication prohibited by this Rule through the acts of another); Holdren v. General Motors Corp., 13 F. Supp. 2d 1192, 1194 (D. Kan. 1998)(same, applying identical Kansas provision).

The plaintiff's lawyers argue that Rule 4.2, C.R.P.C., was not violated because Mehas is a mere bystander witness. Comment 7 to Rule 4.2 disposes of this argument, however:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization . . . whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Thus, for example, in Grayson v. Williams, 256 F.2d 61, 66 (10th Cir. 1958), the Tenth Circuit Court of Appeals affirmed the trial court's decision to allow into evidence as admissions the statements of a truck driver whose employer was sued following an accident, stating:

> The judgment is challenged on the further ground that the court erred in allowing admissions of appellant Grayson [the truck driver] to be admitted in evidence against Southern Freightways, Inc. [his employer].
>
> \* \* \*
>
> Of course, express authority to make admissions will rarely be found in a contract of employment. There is authority for holding admissions made by an agent while acting in the scope of his employment and concerning the subject matter of his employment are binding on the principal.

See Aliotta v. National Railroad Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003)(following Grayson and holding that "Rule 801(d)(2)(D) admissions can be made concerning [*any*] matter within the scope of the . . . employment. . . . To qualify as an admission, an employee need only be performing the duties of his employment when he comes in contact with the particular facts at issue" (Internal citation and quotation omitted; original emphasis)). Similarly, Mehas' statements concerning the bar fight at issue here, which fight occurred while he was employed and on duty as defendant's bartender, may be imputed to his employer for purposes of civil liability. Under these facts, the plaintiff's lawyers and the investigator acting for them were prohibited by Rule 4.2 from communicating with Mehas about the bar fight without the consent of the defendant's lawyer.

The plaintiff's lawyers also argue that they did not know that the defendant was represented at the time Cinquanta interviewed Mehas. I disagree.

First, it is undisputed that beginning in May 2008 (more than one year before the interview at issue here) Jeremy Rosenthal represented a different plaintiff in an action in state court in Pueblo, Colorado, against the same defendant and arising out of a different bar fight. See *Affidavit of Leslie Gelhar* [Doc. # 15-2, filed 11/11/2009] at ¶3; *Plaintiff's Response to Defendant's Motion for Protective Order* [Doc. # 20, filed 11/20/2009] (the "Response") at ¶15. Leslie Gelhar, defense counsel here, was defense counsel in the Pueblo suit. Id. Thus, plaintiff's lawyer here had actual knowledge that the defendant was represented by Mr. Gelhar in a similar but unrelated matter at the time of the Cinquanta interview.

Second Comment 8 to Rule 4.2 provides:

> The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing his eyes to the obvious.

(Internal citation omitted.)

Finally, footnote 6 to Colorado Formal Ethics Opinion 69 states:

> [I]f one has direct information, not indirect general knowledge, that the opposing party is represented by a lawyer and he or she is uncertain whether the representation extends to the subject matter of the communication, the safest course is to establish the scope of the representation and/or the communication with the lawyer before communicating.

Under the facts of this case, I find that the plaintiff's lawyers had actual knowledge that Mr. Gelhar represented the defendant in similar litigation in state court in Pueblo. In view of that knowledge, plaintiff's counsel was obligated not to contact Mehas directly or through their investigator until they clarified whether Gelhar's representation of the defendant extended to this matter as well.

B.   Violation of Rule 4.1(a)

Rule 4.1(a), C.R.P.C., prohibits a lawyer in the course of representing a client from knowingly making a false statement of material fact to a third person. Comment 1 to Rule 4.1 explains that "[o]missions or partially true but misleading statements can be the equivalent of affirmative false statements."

Cinquanta's statement at the beginning of the Mehas' interview identifying himself as "Daril Cinquanta the investigator" is a partially true but misleading statement which is the equivalent of a false statement condemned by Rule 4.1(a). In particular, Cinquanta failed to identify himself as an investigator engaged by plaintiff's counsel in connection with a lawsuit against Mehas' employer.

Colorado Formal Ethics Opinion 69[4] deals with this issue directly:

> [W]henever an attorney is going to communicate with a witness, he or she should identify himself or herself and the reason for the

---

[4]Although Formal Opinion 69 was adopted in 1987 under the Code of Professional Responsibility, the 1995 Addendum to the opinion made clear its continuing validity:

> The Colorado Rules of Professional Conduct became effective on January 1, 1993, replacing the Code of Professional Responsibility. While the language of the Rules is somewhat different from the Code, the Ethics Committee considers this Opinion to continue to provide guidance to attorneys in this area.

> interview. . . . There are several reasons for this. The rule's
> purpose of preserving and promoting a person's right to the advice
> of his or her attorney will be undermined because a person will be
> less likely to utilize counsel if he or she is unaware that the
> questioner is the representative of a potentially adverse party. This
> nondisclosure of identity and purpose might also be viewed as a
> false statement of fact violating Code of Professional
> Responsibility DR 7-102(A)(5) (1977); or conduct involving
> deceit and misrepresentation violating Code of Professional
> Responsibility DR 1-102(A)(4) (1977). . . . For these and other
> reasons, a trial court has even excluded a defendant's statement to
> the plaintiff's investigator because the defendant believed that the
> investigator was sent by his own attorney.

### C.   Violation of Rule 8.4(c)

The defendant also argues that plaintiff's counsel violated their ethical obligations because Cinquanta surreptitiously recorded the telephone interview with Mehas. I agree.

Colorado Formal Ethics Opinion 112, relying on Rule 8.4(c), C.R.P.C., which prohibits "conduct involving dishonesty, fraud, deceit or misrepresentation," provides:

> [G]enerally, a lawyer may not surreptitiously record conversations
> with a third person.
>
> For the same reasons, it is also generally improper for an attorney
> to direct or even authorize another, such as an investigator or legal
> assistant, to record conversations surreptitiously. . . . [W]here [a]
> private investigator retained by an attorney surreptitiously
> recorded a witness interview without the lawyer's prior knowledge
> or approval, the attorney should not listen to or use the tape
> without the witness' permission.

The general rule announced in Opinion 112 has two express exceptions:

> The Committee identifies two circumstances in which attorneys
> generally should be ethically permitted to engage in surreptitious
> recording or to direct surreptitious recording by another: (a) in
> connection with actual or potential criminal matters; and (b) in
> matters unrelated to a lawyer's representation of a client or the

9

> practice of law, but instead related exclusively to the lawyer's private life.
>
> \* \* \*
>
> The criminal law exception that the Committee recognizes is not unlimited. A prosecutor or criminal defense attorney may not surreptitiously record conversations where the law prohibits such recording. Nor may a prosecutor or criminal defense attorney participate in surreptitious recordings, either himself or herself or through others, where such conversations are for purposes other than gathering admissible evidence.

Plaintiff's counsel claim that the Cinquanta interview falls within the criminal law exception, arguing :

> [A]t the time of Mr. Cinquanta's interview of Mr. Mehas, the only relevant legal action pending was a criminal case against two individuals who were allegedly involved in the assault perpetrated against Mr. McClelland.
>
> \* \* \*
>
> Mr. McClelland was the victim of an assault that led to the filing of criminal charges against two other individuals. While Mr. McClelland has not yet been charged with any crime, he was clearly involved in a criminal matter. Mr. McClelland could potentially be charged with Disorderly Conduct, Harassment, Disturbing the Peace, Assault, or Battery for his role in this incident.

*Response* [Doc. # 20] at ¶¶4, 8.

The timing of Cinquanta's surreptitiously recorded interview of Mehas, occurring on the day this action was commenced but nearly a month after the bar fight occurred, indicates strongly that the interview was in connection with this civil action. Even more telling is the content of the interview. In context, it is obvious that Cinquanta was inquiring about facts supporting the plaintiff's civil claims, and not related to the defense of a potential criminal prosecution. Nowhere, for example, did Cinquanta inquire about who was the aggressor. Instead, he focused on the intoxication of Reed and on Mehas' decision to cut off further alcohol

10

service to Reed.

IV.

This matter is presented as a motion for a protective order. During Mehas' deposition, plaintiff's counsel attempted to question him about the Cinquanta interview, resulting in the following colloquy:

> Q. (By Mr. Rosenthal)   Okay.  Do you remember giving an interview a few months back to a Daril Cinquanta?  I mean over the phone.
>
> A.   I didn't remember that, but then I was thinking back, and my wife actually kind of reminded me that there was a phone call from somebody.
>
> Q.   Okay.  I'm going to show you that interview, let you review it.
>
> Mr. Gelhar:   No, we're not going to do that.  This is going to be the subject of a motion with the court unless we agree you're not going to use that.
>
> Mr. Rosenthal:   No, I won't agree to that.
>
> Mr. Gelhar:   Okay.  Then it's a subject of a motion to the court.
>
> \* \* \*
>
> Mr. Gelhar:   We're not going to do that.  If you want to ask him some questions about what he remembers about the conversation, go ahead.
>
> Mr. Rosenthal:   I want him to review this and tell me if that's accurate.  That's totally permissible.
>
> Mr. Gelhar:   No.  No.  You have your opportunity now to ask him any question you want, including questions that may or may not have been posed by Mr. Cinquanta.  So if that's what you want to do, go ahead, but he's not--that statement is not going to be part of this deposition.
>
> \* \* \*
>
> Mr. Gelhar:   We'll take this up with the magistrate.  Ask him whatever question you want.

11

>     Mr. Rosenthal:   But you will not let me show him the interview?
>
>     Mr. Gelhar:   No.
>
>     Mr. Rosenthal:   Okay.
>
>     Mr. Gelhar:   We're not using that interview.
>
>     Mr. Rosenthal:   Then this deposition is over. We'll reconvene it through motions.

*Deposition of Don Mehas* [Doc. # 15-2] at pp. 32-33, 37-38.

Local rule of practice 30.3(A)(3), D.C.COLO.LCivR, allows a lawyer to instruct a deponent not to answer a question during a deposition "to present a motion under Fed. R. Civ. P. 30(d)(3)(A)." Rule 30(d)(3)(A), Fed. R. Civ. P., provides:

> At any time during a deposition, the deponent or a party may move to terminate or limit on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

The plaintiff properly invoked D.C.COLO.LCivR 30.3(A)(3), instructing the witness not to review the Cinquanta interview transcript or answer any questions about that transcript, until he could file a motion for protective order under Fed. R. Civ. P. 30(d)(3)(A). The Motion for Protective Order was promptly filed after the deposition was terminated. I understand the defendant to argue that the Mehas' deposition was being taken in bad faith insofar as the plaintiff sought to rely upon or use the Cinquanta interview transcript in connection with Mehas' examination.

The remedy available under Fed. R. Civ. P. 30(d)(3)(B) where a deposition is taken in bad faith is to "order that the deposition be terminated or . . . limit its scope and manner as provided in Rule 26(c)," and to award expenses and attorney fees under Rule 37(a)(5). Rule 26(c)(1) authorizes me, among other things, to forbid the discovery, forbid the inquiry into certain matters, or limit the scope of discovery.

I find that plaintiff's counsel, through their investigator, violated their ethical duties by (1) contacting Mehas without the permission of defendant's lawyer; (2) failing to identify Cinquanta as an investigator for the plaintiff in connection with this civil action; and (3) using the surreptitiously recorded Cinquanta interview without Mehas' permission. Use of the Cinquanta interview transcript in Mehas' deposition, in view of these ethical violations, was in bad faith.

The proper remedy under these facts is to preclude the use of Cinquanta's surreptitiously recorded interview. The plaintiff may not rely on the recording, a transcript of the interview, or Cinquanta's testimony as to the content of the interview in connection with pretrial discovery. Nothing in this order precludes the plaintiff from developing the same information in a proper manner, however. For example, this order is not intended to prevent the plaintiff from attempting to discover comparable evidence through the discovery process.

The defendant in its Motion for Protective Order seeks the following relief:

> (1) exclusion of the Mehas interview and any reference to the interview or its contents in any further proceedings in this litigation, (2) destruction of any transcribed copies of the interview, (3) that defense counsel be provided with the original audiotape which has been requested but not yet provided by plaintiff and any copies destroyed, (4) exclusion of any testimony by Daril Cinquanta relating to any interviews of any of defendant's employees, including Mr. Mehas and (5) prohibition of any further

>>contacts by plaintiff or his counsel or representatives with defendant's employees working on the night of the incident and/or with managerial and supervisory authority without prior consent of defense counsel.

*Motion for Protective Order* [Doc. # 15] at pp. 4-5.

Given the procedural context of this motion, and particularly the limited relief available by way of a protective order issued under Rule 30(d)(3)(A), Fed. R. Civ. P., the sweeping relief sought by the defendant is not authorized. The district judge ordinarily controls the evidence allowed at trial. This motion is neither postured nor captioned as a motion in limine to exclude evidence at trial, and it is not clear that the district judge would refer to me for ruling such a motion. See Practice Standards (Civil Cases) Judge Christine M. Arguello at Checklist for Civil Trials ¶10.[5]

IT IS ORDERED that the Motion for Protective Order is GRANTED to preclude the use of Cinquanta's surreptitiously recorded interview. The plaintiff may not rely on the recording, a transcript of the interview, or Cinquanta's testimony as to the content of the interview in connection with pretrial discovery.

IT IS FURTHER ORDERED that the Motion for Protective Order is DENIED in all other respects.

---

[5] In view of the sweeping relief sought by the defendant in this motion but not authorized by Fed. R. Civ. P. 30(d)(3)(B), I find that the plaintiff's refusal to accede to the defendant's demand was substantially justified, and I decline to award the defendant its expenses and attorney fees incurred in making this motion because such an award would be unjust. See Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).

Dated December 29, 2009.

                                                BY THE COURT:

                                                s/ Boyd N. Boland
                                                United States Magistrate Judge